**Philip R. WORKMAN, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Jackson.

April 7, 1993.

Permission to Appeal Denied by Supreme Court Nov. 29, 1993.

Christopher M. Minton, Nashville, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Amy L. Tarkington, Asst. Atty. Gen., Nashville, John W. Pierotti, Dist. Atty. Gen., James M. Lammey, Jr., Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

JONES, Judge.

The appellant, Philip R. Workman,[1] appeals of right from a judgment of the trial court summarily dismissing his suit for post-conviction relief. The trial court ruled that the grounds raised in the petition had either been previously determined or waived. As to those issues that were deemed waived, the trial court found that the appellant failed to give an adequate reason for failing to raise the issues on direct appeal or in the first post-conviction suit.

## ISSUES PRESENTED FOR REVIEW

The appellant raised three issues for review. Each issue has a series of sub-issues. The issues raised are:

The criminal court erred in dismissing the petition without holding an evidentiary hearing because the petition alleged facts

entitling him to an evidentiary hearing on the issue of whether his conviction and sentence amount to a fundamental miscarriage of justice rendering the waiver doctrine inapplicable to certain claims and factual bases raised in the petition.

The criminal court erred in dismissing petitioner's petition without holding an evidentiary hearing because the petition alleged facts entitling him to an evidentiary hearing on the issue of whether grounds asserted therein were waived.

*State v. Middlebrooks,* 840 S.W.2d 317, (Tenn.1992), announced "new law" during the pendency of this appeal that renders petitioner's death sentence constitutionally infirm.

## HISTORY OF LEGAL PROCEEDINGS

The appellant was convicted of murder in the first degree in the perpetration of a robbery and sentenced to death. The jury found five aggravating circumstances:

a.) The defendant knowingly created a great risk of death to two (2) or more persons, other than the victim murdered, during the act of murder, Tenn.Code Ann. § 39-2-203(i)(3);

b.) The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another, Tenn.Code Ann. § 39-2-203(i)(6);

c.) The murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, the offense of robbery, Tenn.Code Ann. § 39-2-203(i)(7);

d.) The murder was committed by the defendant while in lawful custody or in a place of lawful confinement or during the defendant's escape from lawful custody or from a lawful place of confinement, Tenn.Code Ann. § 39-2-203(i)(8); and

---

1. The appellant was convicted under the name Phillip Ray Workman. His first Post-Conviction suit was styled "Phillip Ray Workman v. State." The appellant styled this suit "Philip R. Work-

man v. State." It is the policy of this Court to use the name appearing in the pleadings filed in the trial court on appeal.

e.) The murder was committed against any law enforcement officer, corrections official, corrections employee or firefighter, who was engaged in the performance of official duties, and the defendant knew or reasonably should have known that such victim was a law enforcement officer, corrections official, corrections employee or firefighter engaged in the performance of official duties, Tenn.Code Ann. § 39–2–203(i)(9).

The appellant appealed of right his conviction and death sentence. The Supreme Court affirmed both the conviction and death sentence. *State v. Workman*, 667 S.W.2d 44 (Tenn.1984). The United States Supreme Court denied the appellant's petition for certiorari. *Workman v. Tennessee*, 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984).

On March 1, 1985, the appellant initiated his first suit for post-conviction relief. The appellant was represented by Larry D. Woods, who is recognized as an expert in capital litigation, and an associate, Kim L. Kirk. Counsel prepared and filed the petition on behalf of the appellant. The trial court denied the relief sought by the appellant. This Court affirmed the judgment of the trial court. *Philip Ray Workman v. State*, Shelby County No. 111 (Tenn.Crim. App., February 18, 1987, Jackson), per. app. denied May 11, 1987. The United States Supreme Court denied the appellant's petition for certiorari. *Workman v. Tennessee*, 484 U.S. 873, 108 S.Ct. 209, 98 L.Ed.2d 160 (1987).

This suit was instituted on June 27, 1988. Counsel was appointed to represent the appellant. An "Amended Petition for Post–Conviction Relief" was filed by counsel on February 22, 1991. Subsequently, a "Superseding Amended Petition for Post–Conviction Relief" was filed in the cause on January 28, 1992. The trial court filed its findings of fact and conclusions of law on March 20, 1992.

### LAW GOVERNING ISSUES PRESENTED FOR REVIEW

■ In this jurisdiction a petition for post-conviction relief may be summarily dismissed without benefit of an evidentiary hearing if the petition establishes on its face, or the court records reveal, that the grounds raised have been previously determined or waived. Tenn.Code Ann. §§ 40–30–111 and –112; *Caruthers v. State*, 814 S.W.2d 64, 69–70 (Tenn. Crim.App.1991).

■ A ground for relief has been "previously determined" when "a court of competent jurisdiction has ruled on the merits [of the grounds] after a full and fair hearing." Tenn.Code Ann. § 40–30–112(a). A ground is deemed to be "previously determined" when the petitioner appealed as of right from his conviction and the issue was addressed by the appellate court. *Rhoden v. State*, 816 S.W.2d 56, 61, 62, 63, 65 (Tenn.Crim.App. 1991); *Caruthers v. State, supra; Cole v. State*, 798 S.W.2d 261, 264–265 (Tenn.Crim. App.1990). Also, a ground is "previously determined" when a petitioner raises a ground in a post-conviction proceeding, and the ground is addressed on the merits following an evidentiary hearing. *Holiday v. State*, 512 S.W.2d 953, 958 (Tenn.Crim.App.1972). *See Caruthers v. State, supra; Garrett v. State*, 534 S.W.2d 325, 327 (Tenn.Crim.App. 1975); *Doyle v. State*, 3 Tenn.Crim.App. 171, 173, 458 S.W.2d 637, 638 (1970).

■ A ground for relief is said to have been "waived" when the petitioner "knowingly and understandingly failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." Tenn. Code Ann. § 40–30–112(b)(1). There is a presumption, rebuttable in nature, that "a ground for relief not raised in any such proceeding which was held was waived." Tenn. Code Ann. § 40–30–112(b)(2). Before a petitioner is entitled to an evidentiary hearing to rebut this presumption, the petition must allege a legal excuse for not having raised the waived issues on direct appeal or in a prior post-conviction suit. *See Swanson v. State*, 749 S.W.2d 731, 735 (Tenn.1988); *Caruthers v. State, supra; Underwood v. Livesay*, 721 S.W.2d 824, 828 (Tenn.Crim.App. 1986); *Recor v. State*, 489 S.W.2d 64, 70 (Tenn.Crim.App.1972), *cert. denied*, 411 U.S. 920, 93 S.Ct. 1560, 36 L.Ed.2d 313 (1973).

■ A ground is deemed waived when the petitioner fails to raise the ground as part of the direct appeal following conviction. *Rhoden v. State*, 816 S.W.2d at 65. Also, a ground is deemed waived when the petitioner fails to raise the ground in a prior suit for post-conviction relief.

## EXCULPATORY EVIDENCE CLAIM

The petition alleged that the state had failed to furnish defense counsel with materials that are described as "exculpatory evidence." This evidence consisted of certain reports prepared by police officers who either were present on the night in question or investigated the murder of Lieutenant Oliver. The appellant also relied on the statements of certain lay witnesses. The purported "exculpatory evidence" may be categorized in the following manner: (a) the statements that were inconsistent with the state's trial theory; (b) the shooting was triggered when the appellant was hit in the back of the head with a flashlight after he had surrendered and was kneeling on the parking lot; and (c) other officers besides Lt. Oliver and the appellant fired weapons, and Oliver may "possibly" have been killed by "friendly fire."

■ In the landmark case of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court ruled that the prosecution has a compelling duty to voluntarily furnish the accused with any exculpatory evidence that pertains to (a) the guilt or innocence of the accused and/or (b) the punishment which may be imposed if the accused is convicted of a criminal offense. The Supreme Court extended the exculpatory evidence doctrine to impeaching evidence in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). *See Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The Court said in *Brady* that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–1197, 10 L.Ed.2d at 219. Thus, there are three prerequisites that must be met before an accused is enti-tled to relief on this theory. First, the prosecution must have suppressed evidence. Second, the evidence suppressed must have been favorable to the accused. Third, the evidence must have been material. *See United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland, supra; State v. Marshall*, 845 S.W.2d 228 (Tenn.Crim.App.1992); *Strouth v. State*, 755 S.W.2d 819 (Tenn.Crim.App.1986).

■ The prosecutor's duty to disclose is not limited in scope to "competent evidence" or "admissible evidence." The duty extends to "favorable information" unknown to the accused. *State v. Marshall, supra; Branch v. State*, 4 Tenn.Crim.App. 164, 168, 173, 469 S.W.2d 533, 536 (1969). *See United States v. Gleason*, 265 F.Supp. 880, 886 (S.D.N.Y. 1967).

■ The prosecution is not required to disclose information that the accused already possesses or is able to obtain, *State v. Caldwell*, 656 S.W.2d 894, 896–897 (Tenn.Crim. App.1983); *Banks v. State*, 556 S.W.2d 88, 90 (Tenn.Crim.App.1977); or information which is not possessed by or under the control of the prosecution or another governmental agency. *Banks v. State, supra.* Nor is the prosecution required to seek out exculpatory evidence not already in its possession or in the possession of a governmental agency. *See United States v. Xheka*, 704 F.2d 974, 982 (7th Cir.), *cert. denied*, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983). When exculpatory evidence is equally available to the prosecution and the accused, the accused "must bear the responsibility of [his] failure to seek its discovery." *United States v. McKenzie*, 768 F.2d 602, 608 (5th Cir.1985), *cert. denied*, 474 U.S. 1086, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986).

The appellant was not entitled to an evidentiary hearing on this issue.

■ First, defense counsel was aware of the appellant's theory that he was attempting to surrender, he was hit with an object, the shooting occurred after he was struck, and he left the situs of the murder holding his head. This evidence was introduced at the

appellant's trial. *State v. Workman*, 667 S.W.2d at 44. Moreover, the evidence was not material. In *Workman* the Supreme Court said:

> The defendant testified at the trial and admitted both the robbery and the killing, but tried to show he was a drug addict and under the influence of drugs at the time of the crimes. He insisted he was trying to give up when he was 'hit or grabbed' by the officers, and that it was after that that he shot Stoddard and Oliver. He also testified that he could only remember 'bits' and 'pieces' of the events of the evening. On the introduction of evidence that defendant was holding his head as he fled the murder scene and that a flashlight was found on the Wendy's parking lot, the defense filed a motion that the state produce any evidence it had that the defendant had been hit in the head with a flashlight by the victim. The evidence was to be used by the defendant either to show self-defense or to mitigate the killing by proving defendant was stunned when he pulled the trigger. The trial court denied the motion, correctly pointing out that the evidence was irrelevant to defendant's guilt or innocence under *Smith v. State*, 209 Tenn. 499, 354 S.W.2d 450 (1961) (Self-defense no defense to felony murder), and while it would bear on mitigating circumstances, the issue was moot in light of the admission by the state that it had no such evidence.

667 S.W.2d at 47. Thus, defense counsel was aware of the information.

■    Second, the allegation that Lt. Oliver "possibly" was killed by "friendly fire" was refuted by the appellant's own testimony at the trial. As previously noted, the appellant admitted that he committed the armed robbery of the business to police; and he made a judicial confession that he committed the armed robbery and killed Oliver. Other witnesses saw the appellant fire his weapon at Oliver and saw Oliver fall after the shot was fired. In addition, defense counsel was aware that another officer had fired a shotgun at the appellant and struck him in the buttock. This evidence was admitted during the course of the trial. *State v. Workman*, 667 S.W.2d at 47. The appellant does not suggest in his petition that he can prove Lt. Oliver was killed by a projectile fired from another officer's weapon.

■    Third, the purported "exculpatory evidence" was not material. As stated in *United States v. Bagley:* "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." 473 U.S. at 681–682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494. It is clear from the facts hereinabove related that the evidence set forth in the petition was not material given the fact that defense counsel was aware of these circumstances, police officers and lay witnesses saw the appellant shoot Lt. Oliver, and the appellant made a judicial admission that he committed the robbery and killed Oliver. Moreover, the defense of self-defense was not available. In addition, evidence which is only relevant to the issue of guilt or innocence is not admissible at a capital punishment sentencing hearing. *State v. Adkins*, 653 S.W.2d 708 (Tenn.1983), appeal after remand, 725 S.W.2d 660, 663 (Tenn.), *cert. denied*, 482 U.S. 909, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987). *See State v. Hartman*, 703 S.W.2d 106, 119 (Tenn.), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3308, 92 L.Ed.2d 721 (1986).

In reality, the appellant sought to attack the sufficiency of the evidence under the guise of "exculpatory evidence." The "Superseding Amended Petition for Post–Conviction Relief" briefly outlined what the appellant called the "state's theory." He then alleged that "the State's theory is facially unbelievable." Later, he stated that "the following events are far more likely to have transpired...." The appellant attempted to relate every conceivable inconsistency he discovered when reviewing statements in the file of the District Attorney General for the Thirtieth Judicial District. He did not mention or allude to the appellant's confession to the police or the appellant's judicial admission. Also, the factual inconsistencies were not material—these inconsistencies did not establish the appellant's innocence nor did

the inconsistencies undermine the five aggravating circumstances that were found by the jury.

██ It has long been established in this jurisdiction that a petitioner may not litigate the sufficiency of the evidence in a post-conviction suit. *Rhoden v. State,* 816 S.W.2d at 61; *Cole v. State,* 798 S.W.2d at 264; *Gant v. State,* 507 S.W.2d 133, 137 (Tenn.Crim. App.1973); *Ray v. State,* 489 S.W.2d 849, 851 (Tenn.Crim.App.1972); *Parton v. State,* 483 S.W.2d 753, 755 (Tenn.Crim.App.1972), *cert. denied,* 409 U.S. 871, 93 S.Ct. 201, 34 L.Ed.2d 122 (1972); *Brotherton v. State,* 477 S.W.2d 522, 524 (Tenn.Crim.App.1971). The same is true regarding grounds addressing the guilt or innocence of the accused. *See Sloan v. State,* 477 S.W.2d 219, 220 (Tenn. Crim.App.1971); *State ex rel. Leighton v. Henderson,* 1 Tenn.Crim.App. 598, 615–616, 448 S.W.2d 82, 89 (1969).

## PROSECUTORIAL MISCONDUCT CLAIM

██ The appellant alleged that the state interfered with defense counsel's investigation of the facts and circumstances of the crime for which the petitioner was convicted and sentenced to death. The interference consisted of the state advising witnesses not to discuss the facts with defense counsel or their representative.

A defense investigator called a witness and was advised that the witness did not want to talk to the investigator about the matter. When the investigator went to the residence of the witness, no one came to the door. The investigator thought that the witness was at home, but did not answer the door. The investigator attempted to interview employees of the establishment that the appellant robbed. The supervisor told the investigator that the employees of the establishment would not talk to him. The appellant also alleged that the state hid one witness so he would not have to testify. The appellant acknowledged that this witness had to have surgery due to an emergency appendectomy when the case was set for trial.

Based upon a reading of the petition, it is crystal clear there is absolutely no evidence to establish that the state did in fact advise these witnesses not to talk to representatives of the defense. The appellant simply reasons that the witnesses refused to talk with the defense investigator, therefore, the state must have instructed the witnesses not to talk to any representative of the defense. The investigator was not told that the state had instructed the witness not to talk to him. Nor did this investigator draw such a conclusion. The appellant's contention is predicated solely upon the investigator's notes to defense counsel.

The contention that the state hid an eyewitness is ludicrous. This witness had previously told the defense investigator that he did not want to discuss the murder with him. Certainly the state did not create the emergency that necessitated the surgery. Moreover, his testimony would have been cumulative. Also, this witness did not see all of the events that occurred because he ducked to avoid being shot.

██ A petitioner is not entitled to an evidentiary hearing when a ground, couched in conclusory language, is not supported by a factual allegation. *Gant v. State,* 507 S.W.2d 133, 136 (Tenn.Crim.App.1973); *Crumley v. Tollett,* 4 Tenn.Crim.App. 495, 474 S.W.2d 148, 149 (1971); *Jones v. State,* 2 Tenn.Crim. App. 152, 155, 452 S.W.2d 361, 363 (1969).

## PROHIBITION UPON USE OF FELONY USED TO ESTABLISH SUBSTANTIVE OFFENSE OF FELONY MURDER AS AN AGGRAVATING CIRCUMSTANCE

██ While this case was pending in this Court, the Supreme Court decided *State v. Middlebrooks,* 840 S.W.2d 317 (Tenn.1992) (petition for certiorari pending in the United States Supreme Court). Although the appellant did not raise this issue in the trial court, he has raised this issue on appeal. A review of the record reveals that the appellant had continually attacked the constitutionality of the felony murder rule. The appellant, who was convicted of felony murder, argues that his death sentence was rendered unconstitutional based on the holding in *Middlebrooks.*

712

In *Middlebrooks,* the Supreme Court held that the imposition of the death penalty in felony murder convictions "does not *per se* violate Article I, § 16 of the Tennessee Constitution." 840 S.W.2d at 341. However, the Court held that "Tenn.Code Ann. § 39–2–203(i)(7) [now § 39–13–204(i)(7) ] is unconstitutionally applied under the Eighth Amendment to the U.S. Constitution and Article I, § 16 of the Tennessee Constitution where the death penalty is imposed for felony murder." 840 S.W.2d at 346. In other words, the felony used to convict an accused of felony murder cannot be used as an aggravating circumstance to justify the imposition of the death penalty.

Besides finding the aggravating circumstance embraced in Tenn.Code Ann. § 39–2–203(i)(7), the *Middlebrooks* jury found that the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind. Tenn.Code Ann. § 39–2–203(i)(5) [now § 39–13–204(i)(5) ]. The Court, noting that there was ample evidence to support this aggravating circumstance, remanded the cause to the trial court for a new sentencing hearing. This was consistent with the previous policy of the Court. On each occasion the jury has found only two aggravating circumstances, and the Court has determined that one of the circumstances was not established by the evidence or for some other reason was inapplicable or should not have been considered by the jury, the Court has remanded the cause to the trial court for a new sentencing hearing. *See State v. Terry,* 813 S.W.2d 420, 424–425 (Tenn.1991); *Teague v. State,* 772 S.W.2d 915, 929–932 (Tenn. Crim.App.1988), *cert. denied,* 493 U.S. 874, 110 S.Ct. 210, 107 L.Ed.2d 163 (1989), where prior death penalty cases are compiled.

It appears that the Supreme Court will apply the rule announced in *Middlebrooks* retroactively. The Court granted an application for permission to appeal in *Willie Sparks v. State,* Knox county No. 03–C–01–9108–CR–00252, 1992 WL 361025 (Tenn.Sp. Ct., Knoxville, December 1, 1992), a postconviction suit, to determine whether the utilization of the underlying felony as an aggravating circumstance was harmless error. *See State v. Sparks,* 727 S.W.2d 480 (Tenn.),

*cert. denied,* 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987). The Court reached the same result in *Terry Barber v. State,* Lake County No. 2 (Tenn.Sp.Ct., Jackson, December 28, 1992). *See State v. Barber,* 753 S.W.2d 659 (Tenn.1988), *cert. denied,* 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 236 (1988). Such an issue falls within the purview of the Supreme Court's recently announced rule regarding the retroactivity of a decision predicated upon the Tennessee Constitution. *Meadows v. State,* 849 S.W.2d 748 (Tenn.1993), decided February 16, 1993 at Nashville.

In *State v. Bobo,* 727 S.W.2d 945 (Tenn. 1987), *cert. denied,* 484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987), the accused was convicted of murder in the perpetration of a robbery. The jury found three aggravating circumstances, i.e. the accused had been previously convicted of felonies involving the use of violence to the person, Tenn.Code Ann. § 39–2–203(i)(2) [now § 39–13–204(i)(2) ], the murder was committed while the accused was engaged in committing the offense of robbery, Tenn.Code Ann. § 39–2–203(i)(7) [now § 39–13–204(i)(7) ], and the accused had committed mass murder, Tenn.Code Ann. § 39–2–203(i)(12) [now § 39–13–204(i)(12) ]. The Court ruled that the mass murder aggravating circumstance was constitutional, but the facts were insufficient to support this circumstance. The Court, applying the constitutional harmless error doctrine, found that the admission of evidence to support this circumstance was harmless beyond a reasonable doubt. 727 S.W.2d at 955–956.

In *State v. Workman, supra,* the appellant challenged the sufficiency of the evidence to support the aggravating circumstance that the murder was committed by the defendant "while he was in lawful custody or in a place of lawful confinement or during his escape from lawful custody or from a place of lawful confinement." Tenn.Code Ann. § 39–2–203(i)(8) [now § 39–13–204(i)(8) ]. In ruling on this issue, the Court said:

> On this point, the evidence shows that Lt. Oliver and the defendant came out of Wendy's together, and that the defendant did not make a break for freedom until outside the building. After that, Stoddard and

Oliver had the defendant in their grasp immediately before the defendant shot and killed Lt. Oliver. Evidently, the jury found that Lt. Oliver had arrested the defendant inside of Wendy's and had him in custody when defendant made his first break for freedom. We think this is sufficient to justify the jury finding that defendant committed the murder "during his escape from lawful custody." *But, even if it were not, the validity of the death sentence would not be affected in view of the overwhelming evidence of defendant's guilt and the numerous other aggravating circumstances found by the jury, which are admittedly supported by the requisite evidence, and the paucity of evidence of mitigating circumstances.*

667 S.W.2d at 49. (Emphasis added).

Given the fact that the evidence of the appellant's guilt was overwhelming, that there were four aggravating circumstances in addition to the underlying felony used to establish the felony murder conviction, that the appellant admitted the evidence was sufficient to support three of the aggravating circumstances on direct appeal, and that the Supreme Court found that the fourth aggravating circumstance was established by the evidence, the use of the underlying felony as an aggravating circumstance was harmless beyond a reasonable doubt. The deletion of this aggravating circumstance would not change the result reached by the jury. It must be remembered that evidence of the armed robbery was admissible in the guilt portion of the trial. Thus, the jury was not exposed to evidence that was otherwise inadmissible as in *State v. Bobo, supra.*

The appellant is not entitled to an evidentiary hearing based on this ground.

BIRCH, J., and CORNELIA A. CLARK, Special Judge, concur.